HANDY and another, Trustees, *v.* CLEVELAND & M. R. Co. and others.

*(Circuit Court, S. D. Ohio, E. D.* 1887.)

1. RAILROAD COMPANIES—RECEIVERS—DISCRIMINATION.

The receiver of an insolvent railroad company cannot unjustly discriminate in the charges imposed upon rival shippers over his road, in order to increase his revenues, and, if guilty of discrimination, may be removed by the court therefor.

2. SAME—REMOVAL.

The Standard Oil Company having threatened to store its oil until it could lay a line of pipes to Marietta, unless the receiver of a railroad company should give it a special oil rate, the receiver agreed to carry its oil at 10 cents per barrel. to charge rival shippers 35 cents per barrel, and to pay 25 cents per barrel of the sum collected from rival shippers to the Standard Oil Company. *Held* to be such gross and wanton discrimination on the part of the receiver as to require his removal.

*Hugh L. Cole,* for complainants.
*Swayne, Swayne & Hayes,* for defendant.

BAXTER, J.   This suit was commenced in the common pleas court of Washington county, Ohio, January 12, 1885, to foreclose a mortgage upon the road and other property of the defendant, the Cleveland & Marietta Railroad Company, in which Phineas Pease was appointed receiver, and vested with the powers usually conferred in such cases.   In March following it was removed to this court for such further action as the exigencies thereof might require.   Everything progressed satisfactorily until October, 1885, when, upon complaint made of unjust discrimination by the receiver, an investigation was had resulting in the development of the following facts:

The Standard Oil Company owned or controlled certain pipe lines through and by means of which it collected and piped the oil procured by it in the vicinity of Macksburg, a station on said road, to be carried thence by rail, either to Cleveland or Marietta.   It thus controlled a large amount of freight, which the receiver was, very naturally, solicitous of securing.   But the conditions proposed were so unusual and unjust and oppressive to rival shippers that the receiver, after reluctantly acquiescing in the company's demand, sought to fortify himself by the advice of an attorney, and to this end wrote the following communication:

"CAMBRIDGE, OHIO, February 25, 1885.

"*Edward S. Rappello, Esq., General Counsel for Receiver,* 32 *Nassau street, New York*—DEAR SIR:   This will introduce Mr. J. E. Terry, assistant freight agent of this road, whom I send to New York to counsel with you in regard to verbal arrangements made with the Standard Oil Company for transporting the oil product along the line of our road to Marietta.   Upon my taking possession of this road the question came up as to whether I would agree to carry the Standard Company's oil to Marietta for ten cents per barrel, in lieu of their laying a pipe-line and piping their oil.   I of course assented to this, as the matter had been fully talked over with the W. & L. E. R. Co. before my taking possession of the road, and I wanted all the revenue that could be had in this trade.

"Mr. O'Day, manager of the Standard Oil Company, met the general freight agent of the W. & L. E. Railroad and our Mr. Terry at Toledo about February 12th, and made an agreement (verbal) to carry their oil at ten cents per barrel. But Mr. O'Day compelled Mr. Terry to make a thirty-five cent rate on all other oil going to Marietta, and that we should make the rebate of twenty-five cents per barrel on all oil shipped by other parties, and that the rebate should be paid over to them, (the Standard Oil Company;) thus giving us ten cents per barrel for all oil shipped to Marietta, and the rebate of twenty-five cents per barrel going to the Standard Oil Company, making that company, say, twenty-five dollars per day clear money on Mr. George Rice's oil alone.

"In order to save the oil trade along our line, and especially to save the Standard oil trade, which would amount to seven times as much as Mr. Rice's, Mr. Terry verbally agreed to the arrangement, which, upon his report to me, I reluctantly acquiesced in, feeling that I could not afford to lose the shipment of seven hundred barrels of oil per day from the Standard Oil Company. But when Mr. Terry issued instructions that on and after February 23d the rate of oil would be thirty-five cents per barrel to Marietta, Mr. George Rice, who has a refinery in Marietta, very naturally called on me yesterday, and notified me that he would not submit to the advance, because the business would not justify it, and that the move was made by the Standard Oil Company to crush him out. (Too true.) Mr. Rice said: 'I am willing to continue the 17½ c. rate which I have been paying from December to this date.'

"Now, the question naturally presents itself to my mind, if Mr. George Rice should see fit to prosecute the case on the ground of unjust discrimination, would the receiver be held, as the manager of this property, for violation of law? While I am determined to use all honorable means to secure traffic for the company, I am not willing to do an illegal act, (if this can be called illegal,) and lay this company liable for damages. Mr. Terry is able to explain all minor questions relative to this matter.

"Hoping for your careful consideration of this matter and an early reply, I remain, sir, truly yours,        P. PEASE, Receiver and General Manager."

To the foregoing request, Mr. Rapello, "after," as he says in a letter returned with his opinion, "carefully considering the question," and "consulting with his partner, Mr. Cole, and representative bondholders," made the following reply:

"32 NASSAU STREET, NEW YORK, March 2, 1885.

"*General Phineas Pease, Receiver Cleveland & Marietta Railroad Company*—DEAR SIR: My opinion is asked as to the legality of your making such an arrangement with the Standard Oil Company as set forth below.

"The facts, as I understand them, are as follows: The Standard Oil Company proposes to ship, or control the shipping of, a large amount of oil over your road; say a quantity sufficient to yield to you $3,000 freight per month. That company also owns the pipes through which oil is conveyed from the wells owned by individuals to your railroad, except those pipes leading from the wells of Mr. George Rice, which pipes are his own. The company has, or can acquire, facilities for storing all its oil until such time as it can lay pipes to Marietta, and thus deprive your company of the carriage of all its oil. The amount of oil shipped by Mr. Rice is comparatively small; say a quantity sufficient to yield $300 per month for freight. The Standard Oil Company threatens to store, and afterwards pipe, all oil under its control, unless you make the following arrangement, viz.: You shall make a uniform rate of thirty-five cents per barrel for all persons excepting the Standard Oil Company; you shall charge them ten cents per barrel for oil, and also pay them twenty-

five cents per barrel out of the thirty-five cents collected from other shippers.

"It may render the subject less difficult of consideration to determine, first, those acts which you cannot with propriety do as receiver. You are by the decree vested with all the powers of receiver, according to the rules and practice of the court, are directed to continue the operations of the railroad, and can safely make disbursements from such moneys as come into your hands for such purposes only as the decree directs, viz., wages, interest, taxes, rents, freights, mileage on rolling stock, traffic balances, and certain debts for supplies. In my opinion this would not protect you in collecting freight from one shipper and paying it over to another. All moneys received, therefore, from any person for freight over your road must pass into your hands, and there remain, to be disbursed by proper authority. After an examination of your statutes, however, I find no prohibition against your allowing a discount, or charging a rate less than a schedule rate to a shipper on account of the large amount shipped by him. As you are acting, therefore, in the interest of the company, and endeavoring to increase its legitimate earnings as much as possible, I find nothing in the statutes to prevent your making a discrimination, especially where the circumstances are such that a large shipper declines to give your road his freight unless you allow him to ship at less than schedule rates. Therefore there is no legal objection to the making an arrangement which, in practical effect, may be the same as that proposed, provided the objections pointed out above are obviated.

"You may, with propriety, allow the Standard Oil Company to charge twenty-five cents per barrel for all oil transported through their pipes to your road; and I understand from Mr. Terry that it is practicable to so arrange the details that the company can, in effect, collect this direct, without its passing through your hands. You may agree to carry all such oil of the Standard Oil Company, or of others, delivered to your road through their pipes, at ten cents per barrel. You may also charge all other shippers thirty-five cents per barrel freight, even though they deliver oil to your road through their own pipes; and this, I gather from your letter, and from Mr. Terry, would include Mr. Rice.

"You are at liberty, also, to arrange for the payment of a freight by the Standard Oil Company calculated upon the following basis, viz: Such company to be charged an amount equal to ten cents per barrel, less an amount equivalent to twenty-five cents per barrel upon all oil shipped by Rice, the agreement between you and the company thus being that the charge to be paid by them is a certain sum ascertained by such a calculation. If it is impracticable so to arrange the business that the Standard Oil Company shall, in effect, collect the twenty-five cents per barrel from those persons using the company's pipes from the wells to the railroad without its passing into your hands, you may properly, also, deduct from the price to be paid by the company an amount equal to twenty-five cents per barrel upon the oil shipped by such persons. Provided your accounts, bills, vouchers, etc., are consistent with the real arrangement actually made, you will incur no personal responsibility by carrying out such an arrangement as I suggest.

"It is possible that, by a proper application to the court, some person may prevent you, in future, from permitting any discrimination. Even if Mr. Rice should compel you, subsequently, to refund to him the excess charged over the Standard Oil Company, the result would not be a loss to your road, taking into consideration the receipts from the Standard Oil Company, if I understand correctly the figures. There is no theory, however, in my opinion, under the decisions of the courts relating to this subject, upon which, for the purpose, an action could be successfully maintained in this instance.

"Yours, truly,                               EDWARD S. RAPELLO."

From this correspondence it appears that the Standard Oil Company and George Rice were competitors in the business of refining oil; that each obtained supplies in the neighborhood of Macksburg, a station of said railroad, from whence the same was carried to Marietta or Cleveland, and that for this service both were equally dependent on the railroad then in the hands of the receiver. It further appears that the Standard Oil Company desired to "crush" Rice and his business, and that, under a threat of building a pipe for the conveyance of its oil, and withdrawing its patronage from the receiver, O'Day, one of its agents, "compelled Terry," who was acting for and in behalf of the receiver, to carry its oil at ten cents per barrel, and charge Rice thirty-five cents per barrel for a like service, and pay it twenty-five cents out of each thirty-five cents thus exacted from Rice; "making," in the judgment of the receiver, "$25 per day clear money" for it "on Rice's oil alone." But it is due to the receiver to say that, notwithstanding his admitted "reluctant acquiescence" in the contract made by Terry on his behalf, and the indorsement thereof by Rapello, and the further conceded fact that he charged the Standard Oil Company ten cents and Rice thirty-five cents per barrel, as aforesaid, he denies that he ever paid to the Standard Oil Company any part of the money received from Rice. We will therefore, for the present, accept his affirmation touching this matter as true.

But why should Rice be required to pay 250 per cent. more for the carriage of his oil than was exacted from his competitor? The answer is that thereby the receiver could increase his earnings. This pretense is not true. But, suppose it was, would that fact justify, or even mitigate, the injustice done to Rice? May a receiver of a court, in the management of a railroad, thus discriminate between parties having equal claims upon him, because thereby he can accumulate money for the litigants? It has been repeatedly adjudged that he cannot legally do so. Railroads are constructed for the common and equal benefit of all persons wishing to avail themselves of the facilities which they afford. While the legal title thereof is in the corporation of individuals owning them, and to that extent private property, they are, by the law and consent of the owners, dedicated to the public use. By its charter, and the general contemporaneous laws of the state, which constitute the contract between the public and the railroad company, the state, in consideration of the undertaking of the corporators to build, equip, keep in repair, and operate said road for the public accommodation, authorized it to demand reasonable compensation, from every one availing himself of its facilities, for the service rendered. But this franchise carried with it other and co-relative obligations. Among these is the obligation to carry for every person offering business, under like circumstances, at the same rate. All unjust discriminations are in violation of the sound public policy, and are forbidden by law. We have had frequent occasions to enunciate and enforce this doctrine in the past few years. If it were not so the managers of railways, in collusion with others in command of large capital, could control the business of the country, at least to the extent that the

business was dependent on railroad transportation for its success, and make and unmake the fortunes of men at will.

The idea is justly abhorrent to all fair minds. No such dangerous power can be tolerated. Except in the mode of using them, every citizen has the same right to demand the service of railroads on equal terms that they have to the use of a public highway or the government mails; and hence when, in the vicissitudes of business, a railroad corporation becomes insolvent, and is seized by a court, and placed in the hands of a receiver, to be by him operated pending the litigation, and until the rights of the litigants can be judicially ascertained and declared, the court is as much bound to protect the public interests therein as it is to protect and enforce the rights of the mortgagors and mortgagees. But after the receiver has performed all obligations due the public, and to every member of it,—that is to say, after carrying passengers and freight offered, for a reasonable compensation, not exceeding the maximum authorized by law, if such maximum rates shall have been prescribed, upon equal terms to all,—he may make for the litigants as much money as the road, thus managed, is capable of earning. But all attempts to accumulate money for the benefit of the corporators or their creditors, by making one shipper pay tribute to his rival in business at the rate of twenty-five dollars per day, or any greater or less sum, thereby enriching one and impoverishing another, is a gross, illegal, and inexcusable abuse of a public trust, that calls for the severest reprehension.

The discrimination complained of in this case is so wanton and oppressive it could hardly have been accepted by an honest man, having due regard for the rights of others, or conceded by a just and competent receiver, who comprehended the nature and responsibility of his office; and a judge who would tolerate such a wrong, or retain a receiver capable of perpetrating it, ought to be impeached and degraded from his position. A good deal more might be said in condemnation of the unparalleled wrong complained of, but we forbear. The receiver will be removed. The matter will be referred to a master to ascertain and report the amount that has been as aforesaid unlawfully exacted by the receiver from Rice; which sum, when ascertained, will be repaid to him. The master will also inquire and report whether any part of the money collected by the receiver from Rice has been paid to the Standard Oil Company, and, if so, how much, to the end that, if any such payments have been made, suit may be instituted for its recovery.